**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMMAR SULTAN,  <br><br>                    Plaintiff,  <br><br>- v -  <br><br>PLUME, INC. and SHAHNAWAZ JAFFAR,  <br><br>                    Defendants. | Civil Action No.: 23-cv-8830  <br><br>**COMPLAINT**  <br><br>*Jury Trial Demanded* |

Plaintiff Ammar Sultan ("Sultan"), by and through his undersigned attorney, brings this Complaint against Defendants Plume, Inc. ("Plume") and Shahnawaz Jaffar ("Jaffar"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, as well as whistleblower retaliation in violation of New York Labor Law ("NYLL") § 740.

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs. Plaintiff resides in New York and was employed in New York. Defendant Plume is a Colorado-registered corporation headquartered in Denver, Colorado and, upon information and belief, Defendant Jaffar resides in California.

3.      The Court additionally has original jurisdiction over Sultan's federal claims

pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Sultan's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

5. Sultan will file a Charge of Discrimination, arising out of the facts described here, with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA. Upon receiving a Notice of Right to Sue from the EEOC, Sultan will seek leave to amend his Complaint to include ADA claims against Defendant Plume.

6. Within 10 days of the commencement of this action, Sultan will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PARTIES

7. Plaintiff Sultan is a resident of the State of New York and former Senior Director of Finance of Plume.

8. At all relevant times, Sultan was an "employee" of Defendants under all relevant statutes.

9. Plume is a Colorado corporation registered in New York and permitted to do business in New York.

10. Plume employed more than 14 employees throughout Sultan's employment.

11. Plume's corporate headquarters is located at 303 South Broadway, Suite 200-357, Denver, CO 80209.

12. Plume advertises itself as providing "gender-affirming hormone therapy via telehealth for the trans-community across the United States," including "Gender-Affirming Care in New York."

13. Jaffar was at all relevant times employed as Plume's Chief Operating Officer.

14. Upon information and belief, Jaffar resides in California.

15. At all relevant times, Defendants were Sultan's "employers" under all relevant statutes.

## FACTUAL BACKGROUND

### I. Sultan is Hired by Plume and Excels in his Role

16. Sultan received a Bachelor's degree in Accounting and Finance from Oxford Brookes University.

17. Sultan has over 13 years of experience in finance and accounting in the healthcare technology industry.

18. At all relevant times, Sultan possessed certifications as an Associate Certified Chartered Accountant and Certified Accounting Technician.

19. On or about April 27, 2022, Sultan began working for Plume in the position of Senior Director of Finance.

20. Sultan worked for Plume remotely from New York, New York.

21. Sultan succeeded in his role and received positive feedback based on his performance, including positive performance evaluations for the second and third quarters of 2022.

22. Sultan received a performance-based bonus in December 2022.

**II.     Plume Asks Sultan to Produce Financial Model to Violate Ryan Haight Act**

23.     In October 2022, the U.S. Department of Health and Human Services announced that the Public Health Emergency ("PHE") for COVID-19 would conclude on May 11, 2023.

24.     As of the conclusion of the PHE, under the Ryan Haight Act, telehealth providers were required to conduct an in-person consultation before prescribing a controlled substance.

25.     Plume is a subscription-based telehealth service provider, which manages the prescription of controlled substances for its patients.

26.     Because Plume services all its patients virtually, the May 2023 in-person consultation requirement meant that Plume would lose approximately 34% of their customer base.

27.     This lost customer base would have translated to a proportional, approximate 34% loss of Plume's annual revenue of approximately $17 million.

28.     Plume internally decided to disregard the Ryan Haight Act's in-person consultation, and instead analyze on a state-by-state basis where the Drug Enforcement Administration would be likely to pursue its violations.

29.     On November 7, 2022, Shahnawaz Jaffar, Plume's Chief Operating Officer, requested that Sultan develop a financial model that would allow Plume to circumvent the Ryan Haight Act in states with lenient regulations while planning compliance in states with stricter regulations.

30.     Sultan raised ethical and legal objections, but Shahnawaz instructed him to proceed, telling him that "the DEA does not have enough resources to audit big companies like us" and "the deadline to follow [to comply with the law] is too short so we would practically have to let go of about one-third of our revenue."

31. On or about November 14, 2022, during a virtual meeting with Jaffar, Sultan reiterated that he was not comfortable helping to circumvent the Ryan Haight Act because it went against his ethics and was illegal.

### III. Plume Retaliates Against Sultan, Resulting in His Need for Medical Leave

32. Shortly after Sultan raised his objections, Jaffar removed him from the project, reassigning the responsibility to Daniela Borja, Plume's Director of Business Operations.

33. Jaffar began to impose impractical deadlines for Sultan that he knew could not be completed, blamed Sultan for purported collaboration issues within the team, and labeled Sultan as not a "team player."

34. On November 28, 2022, Sultan reported the retaliation to Plume CEO Matthew Wetschler.

35. On November 30, 2022, Sultan spoke with Franny Oxford, Plume's VP of People and Culture, who assured Sultan that Plume would address the matter and speak with Jaffar.

36. Plume took no action, however, and Sultan heard nothing further from Ms. Oxford.

37. As a result, Jaffar's retaliation escalated, and he continued to label Sultan a non-team player, assign unreasonable deadlines, and blame Sultan for team collaboration issues.

38. In January 2023, Plume informed Sultan that the financial model produced by Daniela Borja was completed and asked Sultan to incorporate that model into Plume's budget.

39. Sultan again raised the issue that the financial model required action that was in violation of the Ryan Haight Act.

40. Daniela Borja informed Sultan that the financial model was approved by Plume's in-house legal team as well as outside counsel and told him to move forward with

implementation.

41.     When Sultan asked Plume's inhouse and outside legal team, however, they denied that the plan had been approved and advised that the plan was in violation of the Ryan Haight Act.

42.     Sultan forwarded the legal team's response to Plume CEO Matthew Wetschler, who never responded.

43.     On February 6, 2023, Sultan received his first negative quarterly performance evaluation.

44.     The quarterly performance evaluations Sultan received prior to objecting to Plume's attempts to circumvent the Ryan Haight Act were uniformly positive.

45.     Sultan complained to Ms. Oxford that the performance evaluation was inaccurate and retaliatory.

46.     In response, Ms. Oxford requested a report detailing Sultan's accomplishments and evidence of positive performance feedback from the board.

47.     On March 25, 2023, Plume issued an "Executive Decision - PHE Preparation Direction and Future Plans" document, which included its directors and leadership team to collaborate on a PHE exportation strategy and action plan.

48.     As the head of Plume's finance department, Sultan was originally intended to be a key decision maker on the project.

49.     Plume excluded Sultan from the project altogether and any opportunity to contribute to it.

50.     In early April 2023, Plume engaged a third-party attorney, Kate Bishop, to address Sultan's complaints.

51. Ms. Bishop conducted an interview with Sultan to gather information, after which Sultan received no further communication from her or anyone else regarding the investigation.

52. Plume's continued retaliation against Sultan began to severely impact his mental health.

53. Sultan's doctor diagnosed him with depression and other mental health conditions, which Sultan disclosed to Plume, and required that Sultan take a 30-day leave starting May 9, 2023.

54. Sultan's mental health conditions impacted, among other things, his ability to eat, sleep, concentrate, communicate, care for himself, and work, as well as neurological and brain functions.

55. On June 10, 2023, Sultan's doctor extended his leave, which Plume approved as FMLA leave and told Sultan he had up to 12 weeks of leave to use.

### IV. Plume Terminates Sultan's Employment Two Days After Returning from Medical Leave

56. On July 28, 2023, Plume informed Sultan that the insurance coverage for his leave was under review and, because Sultan had taken two weeks off in the last 12 months, those weeks would be deducted from his allowable FMLA leave and he would need to return to work immediately.

57. On August 14, 2023, Sultan returned to work.

58. On August 16, 2023, Plume terminated Sultan's employment, explaining that his employment was "no longer viable."

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

59. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if

fully set forth here.

60.     The aforementioned facts and circumstances demonstrate that Defendants discriminated against Sultan because he was a member of a protected class.

61.     Sultan is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

62.     Sultan was qualified to work as a Senior Director of Finance for Defendants and he satisfactorily performed the duties required by the position he held with Defendants.

63.     As set forth in detail above and here, Defendants discriminated against Sultan and subjected his to adverse employment actions.

64.     As a direct and proximate result of the unlawful employment practices of Defendants, Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

65.     Accordingly, Defendants discriminated against Sultan because of his disability, in violation of his statutory rights as guaranteed by the NYSHRL.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

66.     Sultan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

67.     As set forth in detail above, Sultan engaged in activity protected under the NYSHRL.

68.     Defendants retaliated by subjecting Sultan to discrimination and adverse employment actions because of his protected activity in violation of Sultan's statutory rights.

69.     Defendant was aware that Sultan opposed unlawful conduct and asserted his

rights under the NYSHRL.

70. Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

71. Accordingly, Defendants retaliated against Sultan in violation of his statutory rights as guaranteed by the NYSHRL.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

72. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

73. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Sultan because he was a member of a protected class.

74. Sultan is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

75. Sultan was qualified to work as a Senior Director of Finance for Defendants and he satisfactorily performed the duties required by the position he held with Defendants.

76. As set forth in detail above and here, Defendants discriminated against Sultan in the terms and conditions of his employment by treating Sultan less well than his similarly situated, non-disabled coworkers.

77. Defendants subjected Sultan to adverse employment action because of his disability.

78. As a direct and proximate result of the unlawful employment practices of Defendants, Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

79. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Sultan, entitling him to punitive damages.

80. Accordingly, Defendants discriminated against Sultan because of his disability, in violation of his statutory rights as guaranteed by the NYCHRL.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

81. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

82. As set forth in detail above, Sultan engaged in activity protected under the NYCHRL.

83. Defendants retaliated against Sultan by treating him less well than similarly situated employees and subjecting him to discrimination and adverse employment actions because of his protected activity in violation of the NYCHRL.

84. Defendant was aware that Sultan opposed unlawful conduct and/or asserted his rights under the NYCHRL.

85. Defendants, unlawfully and without cause, retaliated against Sultan as a direct result of Sultan asserting his rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

86. As a direct and proximate result of Defendants' unlawful employment practices, Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

87. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Sultan, entitling him to punitive damages.

88. Accordingly, Defendants retaliated against Sultan in violation of his statutory rights as guaranteed by the NYCHRL.

### FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation the NYSHRL and NYCHRL)
*Against Jaffar*

89. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

90. Defendant Jaffar aided, abetted, incited, compelled, or coerced Defendants' unlawful conduct, including discrimination, failure to provide a reasonable accommodation, and retaliation, against Sultan by their conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

91. Jaffar was aware of his role as part of the unlawful activity that he assisted in, and knowingly and substantially assisted Defendant in its violations of the NYSHRL and NYCHRL.

92. As a direct and proximate result of Jaffar's conduct, Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

93. Jaffar's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Sultan, entitling him to punitive damages.

### SIXTH CAUSE OF ACTION
### (Retaliation and Interference in Violation of the FMLA)
*Against All Defendants*

94. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if

fully set forth herein.

95. Pursuant to 29 U.S.C. § 2615(a)(2), the FMLA prohibits discrimination or retaliation by any employer against any individual based upon their exercise of any rights provided by the FMLA.

96. Plume engaged in unlawful retaliation against Sultan after he asserted his rights under the FMLA by not restoring him to his position after his leave was completed and, instead, terminating his employment within two days of his return.

97. Plume's conduct was willful, intentional, made in disregard for the rights of plaintiff, and defendants knew or should have known it was in violation of the FMLA, entitling plaintiff to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYLL)
*Against All Defendants*

98. Sultan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

99. Sultan engaged in protected activity under NYLL § 740, including, but not limited to objecting to Plume's request that he assist in circumventing the Ryan Haight Act.

100. Defendant's termination of Sultan's employment in response to that protected activity constituted "retaliatory action" under NYLL § 740(1)(e).

101. As a direct and proximate result of Jaffar's conduct, Sultan has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

102. Jaffar's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Sultan, entitling him to punitive damages.

**RELIEF**

Plaintiff Ammar Sultan demands judgment in his favor and against Defendants Plume, Inc. and Shahnawaz Jaffar as follows:

A. A declaratory judgment that the actions of Defendants complained of violate the FMLA, NYSHRL, NYCHRL, and NYLL;

B. An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct;

C. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Sultan for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

D. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Sultan for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

E. An award of punitive damages, in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Sultan's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Ammar Sultan demands a trial by jury on all issues so triable of right.

Dated: October 6, 2023
New York, New York

                **RISSMILLER PLLC**

          By: */s/ Alex Rissmiller*
             Alex Rissmiller
             5 Pennsylvania Plaza, 19th Floor
             New York, NY 10001
             T: (646) 664-1412
             arissmiller@rissmiller.com

             *Attorney for Plaintiff Ammar Sultan*